### 190, 191.   MATHIS v. HARRELL, and *vice versa.*

1. The petition as amended sets forth a cause of action, and the court did not err in overruling the defendant's demurrer.
2. The court erred in directing a verdict.
3. No other error appears.

Complaint, from city court of Bainbridge—Judge Harrell. December 11, 1906.

Submitted February 27,—Decided March 2, 1907.

*E. S. Longley, J. R. Wilson,* for plaintiff.

*Russell & Hawes,* for defendant.

Powell, J. The instrument under which the plaintiff's cause of action arose is as follows:

"Bainbridge, Ga. Contract between Mart Clothing Company, of the first part, and P. L. Mathis, second part. The Mart Clothing Company is to furnish P. L. Mathis a stock of goods, such as they think best and in such amounts as they think advisable, to do a general business in Bainbridge, Ga., on Water Street, in the Hicks block, to be known as the Bazaar. Said Mathis is to be manager, keep a strict account of the cash, sales and expenses, remit all cash to the Mart Clothing Company, and to sell strictly for the cash; and the minute that anything is charged or sold to any one on a credit, said P. L. Mathis then and there loses all interest in the business, and turns same over to the Mart Clothing Company, without any further claim, and at any time the business does not prove satisfactory, or is not being run satisfactory to the Mart Clothing Company, said Mathis is to turn over the business to the Mart Clothing Company, and to receive sixty dollars per month for his services for each month he has been manager of the Bazaar, less what he has already drawn out. Am to take stock at least once a year, and said Mathis is to receive one half of the net profits for running and managing the same, and P. L. Mathis is to draw not more than fifty dollars for living expenses, or for other use, and the amount he draws is to be deducted from his half of the profits. In case of fire P. L. Mathis is to receive sixty dollars per month for each month he has been manager, less what he has already drawn, and relinquish all further claims to the business. "This 3rd Nov., 1904.

The Mart Clothing Company, per C. C. H.<br>P. L. Mathis."

The petition brought by Mathis alleges, that Mrs. Harrell is the sole owner of the Mart Clothing Company, and that he was to receive for his services under the contract with her, set out above, a salary of $60 per month; that under the contract he took charge of the store and worked in the same as manager for thirteen months and twenty days, performing his contract as agreed; that in November, 1905, by mutual consent of himself and of Mrs. Harrell, he severed his connection with the business, and upon his turning it over to Mrs. Harrell she agreed to pay him, as the balance due him, the sum of $137; but that she neglects and refuses to pay the

same, although due under said contract; wherefore this suit is brought, etc. The defendant filed a general demurrer to the petition, on the ground of no cause of action; also a special demurrer on the ground that "it does not appear how or in what manner defendant became indebted to plaintiff in the amount sued for; it does not allege that the amount sued for represents one half of the net profits, or that it was the balance due upon the salary plaintiff was to receive, according to the terms of the contract." The plaintiff filed an amendment to the petition, amplifying the original allegations, as follows: "that defendant is indebted to him in the sum of one hundred and thirty-seven dollars, under the contract attached to plaintiff's petition; that under said contract plaintiff was to receive a salary of sixty dollars per month for his services as manager of said store; that he worked as manager for the term of thirteen months and twenty-one days; that during said term he drew only fifty dollars per month, and that this defendant is due him the sum of one hundred and thirty-seven dollars on his salary under said contract; that when he left the service of the said defendant she agreed, through her agent, C. C. Harrell, to pay him this amount within one week. Defendant has failed to pay the same or any part thereof." The court overruled the demurrer, and this ruling is complained of in the cross-bill of exceptions. The defendant answered, admitting the execution of the contract, but denying the other material allegations of the petition, and pleading further that the plaintiff had, without her consent, broken the contract, and left her employment; that under the plaintiff's management the business had made no net profits; that in violation of the terms of the contract the plaintiff had, during his management of the business, sold on credit goods to the amount of $200, to various persons, many of whom were insolvent, and that she did not know of this violation of the terms of the contract prior to the time plaintiff left her employ.

The only witnesses sworn in the case were the plaintiff and C. C. Harrell, who was admitted to be the defendant's manager and general agent throughout the transaction. Mathis, by his testimony, substantiated his allegations as to the length of service performed by him. He further testified, that, having the opportunity of working for better wages elsewhere, he told Harrell that he was going to quit, and Harrell consented, and the stocks and books were

turned over; Harrell inquired as to how they should settle; Mathis replied that the quickest way was for Harrell to pay him the $60 per month, unless he desired to take stock; Harrell agreed to settle on this basis, and promised to pay the amount the next week; Harrell requested Mathis to wait a while longer, until he could collect some of the accounts which were outstanding on the books; after a few days another demand for payment was made and Harrell still claimed that he had not collected the accounts; Mathis replied that he would take the accounts as payment on the amount due him; Harrell then told him, "I will not pay you at all; I have consulted a lawyer, and he says I don't have to pay you." Harrell testified, that Mathis, instead of selling for cash only, as required by the contract, sold goods on credit, to various named persons, the aggregate of these credit sales being about $150; during the thirteen months in which Mathis ran the business it lost money, but he was unable to say how much; defendant did not object to his quitting, but refused to pay him, because he had broken the contract and because the business was losing money. Mathis, being recalled, admitted that he had sold a portion of the goods mentioned on credit, the amount of the same aggregating about $110, but denied making the other credit sales claimed by Harrell. As to two of the largest credit sales, amounting to about $75, he asserted that these were made with Harrell's knowledge, and without complaint on his part. Harrell returned to the stand and admitted that credit had been extended to these two customers, with his knowledge and approval, and explained that he was willing for the extension of the credit to them, because they were his regular customers and he could not supply them with the goods they wanted from his other store. This substantially states the entire testimony; and upon it the court directed a verdict for the defendant.

1. Under the allegations of the petition, especially as amended, we think a cause of action is laid. Counsel for Harrell contend that the demurrer should have been sustained because the plaintiff seeks to recover salary at the rate of $60 per month, though, under the contract, he was to have this rate of salary only upon the happening of one or the other of two conditions,—either that the business did not prove satisfactory, or that it was destroyed by fire; neither of which is alleged to have occurred. It will be seen, however, that the plaintiff did not predicate his action directly

upon the contract, but upon a settlement agreed on between the parties at the mutually satisfactory termination of the contract. In our opinion the sum so agreed upon was in strict accordance with the terms of the contract, for this was the amount to be paid "at any time the business does not prove satisfactory;" and the allegation that the arrangement was discontinued by mutual consent can have no other reasonable intendment than that it was satisfactory to quit, and therefore unsatisfactory to continue the business. · However, it is unnecessary for us to decide this much, for irrespective of the rights of the parties under the contract, if in a bona fide attempt to settle the matter the parties agreed on this sum, such an accord would be binding. *City Elec. Ry. Co.* v. *Floyd Co., 115 Ga. 655,* and cases therein cited.

2. We infer from the briefs of counsel that our able and impartial brother of the trial bench directed the verdict for the defendant on the theory that it affirmatively appeared that Mathis had forfeited his rights under the contract, by reason of having sold goods on credit. While it is undisputed that the plaintiff violated the terms of the original contract in this respect, still such a violation could be waived by the opposite party, and it is by no means certain, under the evidence, that such a waiver has not taken place. This is a question for the jury. If Harrell, with notice that these credit sales had taken place, still agreed upon the settlement as claimed by Mathis, he can not repudiate it. Indeed, even in the absence of the contract of settlement, if, during the continuance of the business, Harrell was cognizant of the fact that Mathis was extending credit to customers and made no objection, the jury would be authorized to find that it was his intention to waive this clause of the original contract. The Civil Code, §3642, provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement." There being evidence from which the jury might have found that Harrell had, either in making the settlement or by his conduct pending the continuance of the business, waived the provisions of the contract as to these things, the direction of a verdict was erroneous.

3. Counsel for Mathis further complains that the court erred in excluding his testimony to the effect that Harrell had failed to furnish additional goods for the replenishing of the stock, upon request of Mathis. Proof of this fact was entirely irrelevant to the plaintiff's case as laid. Besides, as we construe the contract, the character and quantity of the goods to be furnished was left to Harrell's discretion; if the kind or amount furnished was not satisfactory to Mathis, he had his remedy under the contract. We hold that the court did not err in excluding the testimony. If Mathis were suing upon the original contract, and upon the theory that the contract terminated because the business did not prove satisfactory, it would be competent for him to testify that the business had become unsatisfactory by reason of Harrell's failure to furnish the goods desired; but such is not the case.

*Judgment, on main bill of exceptions, reversed; on the cross-bill, affirmed.*